IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHIOMA AKASIEM ADIELE,** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 8:24-cv-2723-CDA |
| **KRISTI NOEM,** Secretary, United States Department of Homeland Security, *et al.*, | * * * | |
| Defendants.[1] | *     *     * | |

## MEMORANDUM OPINION

BEFORE THE COURT is the Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment.[2] Defs.' Mot., ECF 15. On July 25, 2022, Plaintiff Chioma Akasiem Adiele filed a Form I-360 with the United States Citizenship and Immigration Services ("USCIS"), seeking special immigrant status under the Violence Against Women Act of 1994 ("VAWA"). Compl., ECF 1, at ¶ 3. Having waited more than twenty-five months without receiving a decision on her application, Ms. Adiele filed this action claiming that Defendants' delay is unreasonable and in violation of her

---

[1] Ms. Adiele filed this case against Alejandro Mayorkas, Ur Mendoza Jaddou, Gregory Collett, Merrick Garland, and Erek L. Barron on September 20, 2024. Compl., at 1. Kristi Noem became the Secretary of Homeland Security on January 25, 2025; Angelica Alfonso-Royals became the Acting Director of the U.S. Citizenship and Immigration Services on May 25, 2025; Pam Bondi became the U.S. Attorney General on February 5, 2025; and Kelly O. Hayes became the U.S. Attorney for the District of Maryland on February 28, 2025. Accordingly, Secretary Noem, Acting Director Alfonso-Royals, Attorney General Bondi, and Ms. Hayes have been substituted as this case's defendants pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] On November 15, 2024, the parties consented to having me conduct all further proceedings in this case. ECF 8.

constitutional rights. Compl. Invoking the Mandamus Act and Administrative Procedure Act ("APA"), she seeks a court order compelling the USCIS to adjudicate her application. Compl., at ¶¶ 41-50. Defendants request dismissal of her action, first arguing that the Court lacks subject matter jurisdiction because there no law requires the USCIS to adjudicate Form I-360s within a specific timeframe. Defs.' Mot. at ¶ 2. Second, even assuming, *arguendo,* that jurisdiction exists, Defendants maintain that the alleged delay is not constitutionally impermissible. *Id.* Ms. Adiele has not filed an opposition.³ The motions are ripe for disposition, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, the Defendants' Motion is **GRANTED**, and the Complaint is **DISMISSED**.

I. BACKGROUND

  *A. Special immigrant status under the Violence Against Women Act*

  The Immigration and Nationality Act ("INA") provides an immigration mechanism that relatives of United States citizens or other lawful permanent residents (LPRs) may pursue through U.S. Citizenship and Immigration Services. 8 U.S.C. § 1101 *et seq.* "[T]he VAWA self-petitioning process allows [a non-citizen] spouse of an abusive United States citizen to seek classification as an immediate relative or a preference immigrant by filing a Form I-360 with USCIS." *Franjul-Soto v. Barr*, 973 F.3d 15, 17 (1st Cir. 2020) (citing 8 C.F.R. § 204.1(a)(3)).⁴ In such a case, VAWA does not require a

---

³ Ms. Adiele's response was due on February 7, 2025. The Court emailed counsel of record on April 2, 2025, seeking advisement on her response. She has not filed anything, sought an extension, or otherwise communicated with the Court.

⁴ Consistent with the Fourth Circuit and the Supreme Court, the Court "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Lovo v. Miller*, 107 F.4th 199, 202 n.1 (4th Cir. 2024) (citing *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020)).

U.S. citizen or LPR to file a form on the non-citizen's behalf; a non-citizen who is a victim of battery or "extreme cruelty" may file a Form I-360 and seek special immigrant classification as the spouse of an abusive U.S. citizen or LPR.  8 U.S.C. §§ 1154(a)(1)(A)(iii); 1154(a)(1)(B)(ii).  The USCIS will approve a Form I-360 if the non-citizen shows that they:  (1) are "eligible to be classified as an immediate relative under" the INA; (2) married or intended to marry a U.S. Citizen or LPR in good faith; (3) were "battered" or "the subject of extreme cruelty" by the U.S. citizen or LPR spouse during the marriage (or relationship intended to be a legal marriage); (4) resided with the U.S. citizen or LPR spouse (or intended spouse); and (5) are "a person of good moral character."  8 U.S.C. §§ 1154(a)(1)(A)(iii)(I)-(II); 1154(a)(1)(B)(iii); *see also Franjul-Soto*, 973 F.3d at 17-18 (citing 8 U.S.C. § 1154(b) (noting the statutory language requiring the Attorney General to approve the I-360 petition upon finding the stated facts to be true)); Defs.' Mot., at 9.

According to an official responsible for overseeing operational policy and guidance of USCIS adjudication programs, a non-citizen may apply to become a LPR by filing a Form I-485, either after the Form I-360 is approved or at the same time the Form I-360 is filed.  Sharon Orise Declaration ("Orise Decl."), ECF 15-1, at ¶ 9.[5]  Non-

---

[5] Ms. Orise attests to being the Adjudications Division Chief for the Service Center Operations Directorate ("SCOPS") of USCIS.  Orise Decl. at § 1.  SCOPS is responsible for adjudicating "petitions filed pursuant to the [VAWA]." *Id.* at ¶ 14.  The Court is aware that Ms. Orise's declarations have been considered in other cases in a similar posture.  *See Dhaubhadel v. Blinken*, No. 24-cv-1427-MJM, 2025 WL 958569, at *3 (D. Md. Mar. 31, 2025); *Joshua v. Jaddou*, No. 24-cv-667-JRR, 2025 WL 449001, at *3 (D. Md. Feb. 10, 2025); *Aina v. Mayorkas*, No. H-24-1006, 2024 WL 3070185, at *3 (S.D. Tex. June 20, 2024).

citizens with a pending Form I-485 petition may also file a Form I-765, which allows applicants to "work and travel" during the pendency of those applications. *Id.* at ¶ 11.

### B. Ms. Adiele's efforts at relief with USCIS and in this Court[6]

Ms. Adiele explains that she filed a Form I-360 on July 25, 2022. Compl., at ¶ 3. She says that she "provided all information requested by the USCIS and has complied with all appointment notices." *Id.* ¶ 16. Ms. Adiele alleges that she called the USCIS customer service line and was informed that her Form I-360 was still pending, that no estimate on adjudication was available, and that no one on the service line could do anything but wait for the reviewing individuals to act. *Id.* at ¶ 19. She insists that Defendants have and continue to adjudicate (favorably, at that) petitions filed after hers. *Id.* at ¶ 23.

Having waited more than twenty-five months without a decision, Ms. Adiele filed this action on September 20, 2024. *See* Compl. She asserts that Defendants' delay in adjudicating her Form I-360 caused her emotional distress and lost wages, amounting to a violation of her constitutional rights and federal law. *Id.* at ¶ 23-50. Ms. Adiele notes that as her application remains pending, "[t]he prospects of her child migrating to the U.S. will continue to be uncertain." *Id.* at ¶ 23. Citing this unfortunate and concerning circumstance, she seeks prompt adjudication without further delay.

---

[6] As explained below, *infra*, the Court assumes the truth of all well-pleaded facts for the purpose of deciding this Motion.

In lieu of an answer, Defendants filed the pending Motion seeking dismissal based on lack of jurisdiction and, alternatively, failure to state a claim.[7] Ms. Adiele has not filed an opposition or any other documents since the Complaint.

## II. STANDARD OF REVIEW

A. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

"Questions of subject matter jurisdiction must be decided first because they concern the court's very power to hear the case." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (cleaned up). Federal courts must dismiss a case if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see also* Fed. R. Civ. P. 12(h)(3); *See CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 474 (4th Cir. 2015). One way a court lacks jurisdiction is when "'a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.'" *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009) (*Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "When a defendant makes a facial challenge to subject matter jurisdiction," courts must regard "the facts alleged in the complaint . . . as true" and deny a 12(b)(1) motion to dismiss "if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "The plaintiff bears the burden of proving, by a preponderance of evidence,

---

[7] Apart from their arguments and contentions supporting dismissal, Defendants acknowledge that Ms. Adiele also filed a Form I-485 and has an approved Form I-765— valid through October 31, 2028—based on the pending Form I-485. Orise Decl., at ¶ 35.

the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (citations omitted).

    B. *Motion to Dismiss for Failure to State a Claim*

Under Rule 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding on a 12(b)(6) motion to dismiss, courts "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"). "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 Fed. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'y's Office*, 767 F.3d 379, 396 (4th Cir. 2014) (citing *Twombly*, 550 U.S. at 570). Courts may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the

complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

## III.   ANALYSIS

### A. *The Mandamus Act claim fails because the Court has subject matter jurisdiction over her APA claim.*

The Court lacks subject matter jurisdiction to hear Ms. Adiele's Mandamus Act claim because she fails to demonstrate conditions necessary to obtain mandamus relief and, in any event, she asserts an APA claim over which the Court has subject matter jurisdiction.

Federal courts maintain original jurisdiction over mandamus actions seeking to compel federal officers "to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is a "drastic" remedy reserved for "extraordinary situations." *Kerr v. U.S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 402 (1976). The Fourth Circuit has long acknowledged five conditions necessary to obtain mandamus relief; for the purpose of this opinion, the Court emphasizes that two of these prerequisites are a "clear and indisputable right to the relief sought" and the defendant's "clear duty to do the specific act requested." *U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 511 (4th Cir. 1999). As a result, "[m]andamus against a public official will not lie unless the alleged duty to act involves a mandatory or ministerial obligation which is so plainly prescribed as to be free of doubt." *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988).

Jurists in this District have denied relief in similar circumstances where the applicant fails to identify a clear, nondiscretionary duty to adjudicate petitions in a specific timeframe. *See, e.g.*, *Dhaubhadel*, 2025 WL 958569, at *2. No such contention

appears in the Complaint. Nor is the Court aware of any specific time required by Congress. "While USCIS is required to process applications 'within a reasonable time,' that time is not fixed." *Id.* (quoting 5 U.S.C. § 555(b)). Therefore, Ms. Adiele falls short of the standard to obtain the drastic remedy of mandamus.

A related and equally, if not more, critical flaw dooms the mandamus claim here: the availability of an alternative remedy or other vehicle for relief. Because only extraordinary circumstances justify mandamus, the party seeking mandamus must demonstrate the absence of "other adequate means" to obtain the desired relief. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980). "When there is an adequate alternative remedy, '[m]andamus-style relief is precluded . . ., even where that alternative remedy is less efficient or less effective than mandamus relief would be.'" *Dhaubhadel*, 2025 WL 958569, at *2 (quoting *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 267 (D.D.C. 2012)). Mandamus relief is inappropriate here because Ms. Adiele "asserts the same claim under the APA." *Joshua*, 2025 WL 449001, at *5; *see also Jahangiri v. Blinken*, No. 23-cv-2722-DKC, 2024 WL 1656269, at *14 (D. Md. Apr. 17, 2024) ("Courts . . . lack jurisdiction to decide claims for mandamus relief which would be duplicative of their cause of action under the APA."). Citing both the Mandamus Act and the APA, Ms. Adiele seeks a court order compelling the USCIS to adjudicate her application, claiming that Defendants have unreasonably delayed her Form I-360 adjudication. *See, e.g., Joshua*, 2025 WL 449001, at *5 (defining as duplicative Mandamus Act and APA claims based on a delay in the USCIS adjudication of a Form I-360). Where a mandamus claim "'depends on the delay being unreasonable under the APA,'" it must be dismissed as duplicative, for the relief—if justified—is

8

available under the APA. *Jahangiri*, 2024 WL 1656269, at *14 (quoting *Khan v. Blinken*, No. 21-cv-1683-JEB, 2021 WL 5356267, at *4 (D.D.C. Nov. 17, 2021)).

As a final note on the mandamus issue, the D.C. Circuit explained that courts should reject mandamus claims that would, in effect, allow an applicant "to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016); *see also Jahangiri*, 2024 WL 1656269, at *14. The Court heeds this suggestion and finds it to be a third reason to dismiss the Mandamus Act claim. For all these reasons, the Court lacks subject matter jurisdiction to hear the Mandamus Act claim. It is dismissed.

### B. *The APA claim fails because the alleged delay in adjudicating the Form I-360 is not unreasonable at this time.*

At the outset, the Court agrees that it has subject matter jurisdiction to hear Ms. Adiele's APA claim. "[A] district court has subject matter jurisdiction to compel agency action under . . . the APA only if the agency has a non-discretionary duty to act." *Mokuolu v. Mayorkas*, No. 24-cv-817-RDB, 2024 WL 4783542, at *5 (D. Md. Oct. 1, 2024) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004)). Adjudicating a Form I-360 is considered a non-discretionary duty of the USCIS. *Joshua*, 2025 WL 449001, at *7; *Patel v. Jaddou*, No. 23-cv-4021-KK-ASx, 2023 WL 9546656, at *3 (C.D. Cal. Dec. 26, 2023); *see also Mokuolu*, 2024 WL 4783542, at *5 (observing that 8 C.F.R. § 245.2 and 8 U.S.C. § 1154(b) of the INA "impose a non-discretionary duty to adjudicate VAWA petitions"). Because Ms. Adiele alleges that Defendants have unreasonably delayed the adjudication of her Form I-360, the Court has the power to hear her APA claim. *See, e.g.*, *Joshua*, 2025 WL 449001, at *7. Therefore, the Court will consider the

9

unreasonable delay claim alleged pursuant to § 706(1) of the APA. *See Turner v. Blinken*, No. 24-318-RDB, 2024 WL 4957178, at *1 n.3 (D. Md. Dec. 3, 2024).

The APA provides that an agency must, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, . . . shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). A claim brought under Section 706(1) of the APA "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton*, 542 U.S. at 64; *see also* 5 U.S.C. § 706 (defining the scope of judicial review pursuant to the APA). Agency actions include not only granting relief but also the "denial thereof, or failure to act . . . ." 5 U.S.C. § 551(13). Where an agency does not act as required, courts may "compel agency action unlawfully withheld or unreasonable delayed." *Begum v. U.S. Dep't of State*, No. 22-cv-0478-JMC, 2022 WL 16575703, at *5 (D. Md. Oct. 31, 2022) (cleaned up). "There is no per se rule as to how long is too long to wait for agency action." *Dennis v. Blinken*, No. 22-cv-2522-JRR, 2023 WL 4764576, at *5 (D. Md. July 26, 2023) (internal quotation marks and citation omitted). "The central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus." *Ibid*. at *4.

To determine whether a processing delay on an immigration application is unreasonable, this Court considers six factors enumerated by the D.C. Circuit in *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC* Factors"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;

> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic legislation are less tolerable when health and human welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; [and]
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Dhaubhadel*, 2025 WL 958569, at *2; *Joshua*, 2025 WL 449001, at *7; *Mokuolu*, 2024 WL 4783542, at *6; *Jahangiri*, 2024 WL 1656269, at *7.[8] These factors "weigh the interests at stake and the effect of expediting delayed agency action in granting an injunction." *South Carolina v. United States*, 907 F.3d 742, 759 (4th Cir. 2018). Assessing the TRAC factors is a fact-intensive endeavor. *See Joshua*, 2025 WL 449001, at *7; *Mokuolu*, 2024 WL 4783542, at *6. Upon consideration of these factors, the Court finds Defendants' delay not unreasonable. Because Ms. Adiele fails to allege a plausible claim of unreasonable delay, her APA claim must be dismissed.

    **i.**   ***TRAC* Factors One and Two favor dismissal.**

Courts often consider *TRAC* Factors One and Two together. *See Dhaubhadel*, 2025 WL 958569, at *3 (citing *Jahangiri*, 2024 WL 1656269, at *8); *Begum*, 2022 WL 16575703, at *7. Both factors focus on "the reasonableness of the delay," *Begum*, 2022 WL 16575703, at *7, and "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale," *Dhaubhadel*,

---

[8] Courts are permitted to consider the *TRAC Factors* at the motion to dismiss stage. *See Jahangiri*, 2024 WL 1656269, at *8 (collecting cases).

11

2025 WL 958569, at *3. *TRAC* Factor One is the most important of the *TRAC* Factors. *Begum*, 2022 WL 16575703, at *7. There is no statutory or regulatory timeframe for adjudicating a Form I-360. *Mokuolu*, 2024 WL 4783542, at *7. Even so, a review of authority reveals that *TRAC* Factors One and Two weigh in favor of Defendants. *Cf. id.* (observing that "reviewing courts look to case law to determine the reasonableness of a [Form I-360]'s processing time").

Turning to *TRAC* Factor One and the matter of whether USCIS's response time is "governed by an identifiable rationale," courts have considered the way applications are processed and the volume of pending applications. *Dhaubhadel*, 2025 WL 958569, at *3 (citation omitted); *Joshua*, 2025 WL 449001, at *8 (citation omitted). Like in *Dhaubhadel* and *Joshua,* Defendants submit a declaration explaining the First-In First-Out process ("FIFO"), through which USCIS adjudicates I-360 and I-485 petitions in the order that they were filed with the agency, subject to limited exceptions that do not appear applicable here.[9] Orise Decl. at ¶¶ 23-24; *see also Dhaubhadel*, 2025 WL 958569, at *3; *Joshua*, 2025 WL 449001, at *8. Several courts have considered the FIFO method a "rule of reason" under *TRAC* Factor One. *Mokuolu*, 2024 WL 4783542, at *6 (citing *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 261 (E.D.N.Y. 2021); and then citing *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)). According to the USCIS website, as of the date of this opinion, the current estimated processing time for I-360 VAWA petitions is approximately 43 months.[10] Defendants proffer that as of June

---

[9] As an example, Ms. Orise explains that there may be requests for expedited adjudication based on either "urgent humanitarian need" or the request of another federal agency. Orise Decl. at ¶ 24.

[10] *See* USCIS, Check Case Processing Times, *available at* https://egov.uscis.gov/processing-times/ (last visited September 11, 2025). While the

2024, there were 146,433 pending Form I-360s. Orise Decl. at ¶ 30. Recent opinions from this Court have found that similar circumstances favor dismissal. *Dhaubhadel*, 2025 WL 958569, at *3 (noting an average time of 42 months and the pendency of nearly 132,000 VAWA self-petitions).

Looking at *TRAC* Factor Two, there is no bright line to determine when an immigration processing delay becomes unreasonable. *See Joshua*, 2025 WL 449001, at *8; *Begum*, 2022 WL 16575703, at *7. "Courts have grouped processing durations into three categories: (1) delays of greater than five years are generally unreasonable; (2) delays between three and five years are typically not unreasonable; and (3) delays of two years or less are generally reasonable." *Mokuolu*, 2024 WL 4783542, at *7. At the time Ms. Adiele filed her Complaint, twenty-five months passed without adjudication. Compl., at ¶ 3; *see* ECF 1-2, at 2-3. That duration falls within the category of delays that courts typically deem not unreasonable. Other decisions from the Court concluded that even greater delays were not unreasonable. *See Joshua*, 2025 WL 449001, at *8 (forty-one months); *Mokuolu*, 2024 WL 4783542, at *7 (thirty months).[11]

As a final note on these two factors, Ms. Adiele does not demonstrate that USCIS deviated from the FIFO process—or any other governing rule of reason—by, for

---

Court's preference is to include a permanent URL preserving the website as last viewed, the address leads to USCIS webpage with multiple dropdown menus to input the type of form (e.g., I-360) and category (i.e., VAWA). Selection of those options generates the relevant processing time. However, the website URL remains the same, such that preserving the address would lead the reader to only the landing page as it first appeared—without the dropdown options selected or processing times displayed—and not as viewed by the Court after making the selections relevant to the facts here.

[11] As of the date of this opinion, the delay is approximately 38 months. That is still within the range of "not unreasonable" delay and shorter than the "not unreasonable" delay in *Joshua*.

example, adjudicating later-filed applications.  *See Dhaubhael*, 2025 WL 958569, at *3 *Joshua*, 2025 WL 958569, at *8; *Mokuolu*, 2024 WL 4783542, at *6.  Her general assertion, devoid of non-conclusory facts, does not demonstrate deviation from FIFO or another rule of reason.  For all these reasons, *TRAC* Factors One and Two favor dismissal.

### ii. *TRAC Factors* Three and Five are neutral.

*TRAC Factors* Three and Five are often considered together.  *Dhaubhael*, 2025 WL 958569, at *4; *Joshua*, 2025 WL 449001, at *9; *Mokuolu*, 2024 WL 4783542, at *7; *Dennis*, 2023 WL 4764576, at *8.  These factors regard an applicant's "interests, health, and welfare and the prejudice to those interests from delay."  *Dhaubhael*, 2025 WL 958569, at *4 (cleaned up).  Courts consider the full "nature and extent of the interests prejudiced by the delay[,]" including economic harm, the threat of family separation, and an imminent risk of removal.  *Id.* at *4; *Mokuolu*, 2024 WL 4783542, at *7; *Begum*, 2022 WL 16575703, at *9.  The relevant interests are those of both the applicant and any similarly situated individuals.  *Mokuolu*, 2024 WL 4783542, at *7.  On its own, emotional distress due to the uncertainty of the Form I-360 processing duration "is insufficient to allege unreasonable delay under the" *TRAC Factors* Three and Five.  *Id.*

Ms. Adiele alleges three prejudices:  the threat of family separation, economic harm, and emotional distress.  Compl., at ¶ 23.  The latter two prejudices are insufficient to demonstrate unreasonable delay under *TRAC Factors* Three and Five.  Ms. Adiele first says that she "lost a significant amount of work time while pursuing her Form I-360 Petition."  *Id.*  The Court is not aware of any authority acknowledging this type of economic harm as prejudicial in this context.  Furthermore, her mention of losing work time to "make oral and written inquiries with the USCIS, consulting with lawyers, and

14

scheduling and attending appointments" is not unique to Ms. Adiele. *Id.* (cleaned up). Other Form I-360 applicants likely have similar experiences, making this prejudice insufficient to tilt these factors in her favor. *See Joshua*, 2025 WL 449001, at *9 (finding these factors favoring dismissal where plaintiff failed to allege harm "distinct or more significant than those experienced by all VAWA self-petitioners"); *Mokuolu*, 2024 WL 4783542, at *7 (noting that "general mental health and employment hardships [plaintiff] cites—though no doubt significant—are similar to those experienced by all VAWA self-petitioners"). Ms. Adiele then says that the uncertainty of adjudication causes her emotional distress. Compl., at ¶ 23. For the same reasons explained in *Mokuolu*, this, too, is insufficient. 2024 WL 4783542, at *7.

      The first prejudice—family separation—warrants more attention. Ms. Adiele alleges that the longer she waits, the longer she remains separated from her child. Compl., at ¶ 23. In general, this is sufficient to demonstrate unreasonable delay under *TRAC* Factors Three and Five. *See, e.g., Jahangiri*, 2024 WL 1656269, at *11; *Dennis*, 2023 WL 4764576, at *8; *Begum*, 2022 WL 16575703, at *9. But there are other considerations. Because she currently has an employment authorization permitting her to work legally in the United States through October 31, 2028, Orise Decl., at ¶ 35, Ms. Adiele does not demonstrate an imminent risk of removal. Under such a circumstance, "the effect of the delay . . . is not so severe as to justify prioritization above those submitted by similarly situated petitioners." *Dhaubhael*, 2025 WL 958569, at *4. The Court notes that despite filing their Form I-360s around the same time, Ms. Adiele has authorization to work an additional three years longer than the plaintiff had in *Dhaubhael*, making the risk of removal even less imminent here than in that case.

15

Some opinions of this Court have found family separation, on its own, sufficient to conclude that *TRAC Factors* Three and Five favored an applicant. However, those opinions do not reference an imminent risk of removal in their analyses or discuss the impact of potential separation from a child despite authority to remain in the country. It is unclear whether, like here, those situations involved employment authorizations and how such authorizations might have counterbalanced familial separations.

In the end, the employment authorization weighs against Ms. Adiele because she does not appear to face an imminent risk of removal. *See Dhaubhael*, 2025 WL 958569, at *4. Yet the prospect of family separation favors her in this analysis. As a result, *TRAC* Factors Three and Five are neutral.[12]

### iii.   *TRAC* Factor Four favors dismissal.

This factor concerns "the effect of compelling agency action given the agency's competing priorities." *Mokuolu*, 2024 WL 4783542, at *8. *TRAC* Factor Four "carries significant weight." *Dennis*, 2023 WL 4764576, at *8; *accord Jahangiri*, 2024 WL 1656269, at *11 (observing that where *TRAC* Factor Four weighs against an applicant, courts may still refuse to compel agency action even if all the other *TRAC* Factors favor the applicant). Courts are hesitant to compel agency action that has the effect of "putting the petitioner at the head of the queue" and "simply mov[ing] all others back

---

[12] To be clear, this conclusion does not prevent courts from relying on evidence of family separation to conclude that *TRAC* Factors Three and Five favor a plaintiff. Rather, where there is evidence of family separation *and* other evidence regarding the "nature and extent of the interests prejudiced by the delay," *Dhaubhael*, 2025 WL 958569, at *2; *Mokuolu*, 2024 WL 4783542, at *7; *Begum*, 2022 WL 16575703, at *9, courts should—at the very least—consider all the evidence in its analysis. The Court has an obligation to weigh the hardships of family separation with the benefits of an employment authorization to understand whether "the effect of the delay . . . is [] so severe as to justify prioritization above those submitted by similarly situated petitioners." *Dhaubhael*, 2025 WL 958569, at *4.

16

one space." *Begum*, 2022 WL 16575703, at *8 (internal quotation marks and citation omitted). In fact, "federal courts have rejected § 706(1) claims where the only relief would create a 'line-skipping concern' relative to other petitioners." *Mokuolu*, 2024 WL 4783542, at *8 (internal quotation marks and citation omitted); *cf. Am. Hosp. Ass'n*, 812 F.3d at 192 (citing such concerns as a reason to deny mandamus relief).

Based on these concerns, *TRAC* Factor Four tilts toward dismissal. Ms. Adiele seeks exactly what this factor intends to prevent: having her Form I-360 adjudicated before earlier-filed Form I-360s. She fails to allege facts sufficient to show that line-skipping is appropriate here. *See, e.g., Mokuolu*, 2024 WL 4783542, at *8.

### iv.    *TRAC* Factor Six is neutral.

*TRAC* Factor Six "concerns agency motivation." *Begum*, 2022 WL 16575703, at *9. It "reminds courts that they need not find any impropriety . . . to hold that agency action is unreasonably delayed." *Id.* (internal quotation marks and citation omitted). Courts deem this factor neutral where the plaintiff does not plausibly allege bad faith or impropriety. *See Dhaubhadel*, 2025 WL 958569, at *5; *Joshua*, 2025 WL 449001, at *10; *Jahangiri*, 2024 WL 1656269, at *12; *Dennis*, 2023 WL 4764576, at *9. Because Ms. Adiele does not allege bad faith or impropriety, *TRAC Factor* Six is neutral.

\*    \*    \*

The *TRAC* Factors analysis results in three neutral factors and three factors favoring dismissal. The three factors favoring dismissal, however, often receive more weight than the others. Therefore, the Court finds that Ms. Adiele fails to plausibly allege a claim of unreasonable delay under the APA. Of course, a change in circumstances could lead to a different outcome. *Compare Islam v. Heinauer*, No. C 10-04222-JSW, 2011 WL 2066661, at *8 (N.D. Cal. May 25, 2011) ("Although the Court can

foresee a point at which the delay in ruling on Islam's I–485 Application would be unreasonable, based on the existing record, that time has not yet come.") *with Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1074 (N.D. Cal. 2014) (granting summary judgment in applicant's favor; "Now, with Islam's petition pending just shy of six years, and with no indication from defendants of when or whether he can expect any decision in the future, the day prophesied in *Islam I* has arrived.").

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. All claims in the Complaint are hereby **DISMISSED** without prejudice to re-file should any delays become unreasonable.

A separate Order consistent with this Opinion will issue.


Date: September 17, 2025

                                          /s/
                                  Charles D. Austin
                                  United States Magistrate Judge